IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GLORIA MCDANIEL,

       Plaintiff,                                   05cv1772

v.                                        **ELECTRONICALLY FILED**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

<u>Memorandum Opinion</u>

**I.     Introduction**

Plaintiff Gloria McDaniel brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her application for Supplemental Security Income ("SSI"). Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the memoranda of the parties, and the entire record, the Court finds the ALJ's decision is not supported by substantial evidence in certain respects, and therefore will deny the Commissioner's motion for summary judgment, grant plaintiff's motion for summary judgment in part, and remand for further proceedings.

**II.     Procedural History**

Plaintiff applied for SSI on October 3, 2003, alleging she became disabled on August 26, 2003 as a result of disabling pain in her knees. The application was denied initially and upon reconsideration and on April 13, 2005, 2002, a hearing was held before ALJ Alma S. DeLeon, at which plaintiff testified, as did a vocational expert ("VE"), Francis Kinley. Plaintiff was represented by counsel. On June 23, 2005, the ALJ issued a decision denying SSI.

The Appeals Council affirmed this decision, which therefore became the final decision of the Commissioner. Thereafter, plaintiff timely commenced this action, and the matter is now before this Court on the cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**III.    Statement of the Case**

**A.     Brief Medical History**

Plaintiff, who was 49 years old at the time of the ALJ's decision, has a high school education and prior work experience as a sales associate, housekeeper, and tele-marketer. She alleged disability as of August 26, 2003, due to knee problems, but she continued to work as a part time nanny through August 1, 2004. Plaintiff began treating with orthopedic surgeon, Dr. Levine, for knee problems in 2003; she underwent an MRI which revealed minimal to mild medial compartment narrowing; and, she was prescribed physical therapy. Beginning in June of 2004, plaintiff began treating with Dr. Henry (an associate of her primary care physician Dr. Dhawan) for pain in her shoulder, neck and radiating down her arm. An x-ray revealed osteoarthritis and disc narrowing between C5-C6. Plaintiff was again prescribed physical therapy, as well as Percocet and other over the counter medications. An MRI revealed severe

2

degenerative changes at the C5-6 disc space plus bilateral spurs producing C6 neural foraminal stenosis, and a C6-7 spur encroaching upon the left C7 neural foramen.

Beginning on September 9, 2003, and continuing throughout this time span, plaintiff was also seen by her primary care physicians (Drs. Dhawan, and associate, Dr. Lee) for depressive symptoms, hot flashes and other problems related to menopause. Plaintiff was prescribed Paxil by Dr. Dhawan, and was later prescribed Wellbutrin by Dr. Lee. Also, significantly, Dr. Dhawan opined to the Pennsylvania Department of Public Welfare that plaintiff was temporarily disabled due to a primary diagnosis of depression and a secondary diagnosis of osteoarthritis. Further, at the request of plaintiff's attorney, plaintiff underwent a psychological profile, which was performed by psychologist, Dr. Meacci. Dr. Meacci performed several tests and took a full psychological profile from plaintiff, and ultimately diagnosed her with Bipolar II disorder (recurrent major depressive episodes with hypomanic episodes), and (2) an adjustment disorder with mixed prominent anxiety symptoms and some depressive mood symptoms. Further, he completed an assessment of plaintiff's ability to do work related functions and opined that she would have fair to no ability to perform most activities in a work-setting.

**B.      Summary of ALJ's Decision**

In the decision, the ALJ found that plaintiff has osteoarthrosis and allied disorder, and pancreatitis. R. 22. The ALJ considered these impairments severe, but not severe enough to meet any of the Listed Impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Accordingly, the ALJ turned to the residual functional capacity ("RFC") portion of the disability analysis, and determined plaintiff had the RFC to perform her past relevant work, that plaintiff can lift and carry no more than 20 pounds, that she must have a sit/stand option, that she can kneel, squat,

crawl, balance, climb and walk on occasions and her ability to push and pull is limited in both upper and lower extremities, and that she cannot reach overhead. The ALJ found that defendant's alleged mental impairment was not severe. The ALJ stated the following:

> On consideration of all evidence in the record, I conclude that the described mental impairment is not severe as defined in the regulations. The claimant has received no mental health treatment and according to treatment notes, the Wellbutrin prescribed for the claimant is to control menopausal symptoms. While the consulting physician, Dr. Meacci, diagnosed the claimant with a bipolar disorder that would essentially prevent the claimant from performing work on a regular and sustained basis due to this disorder, he only examined claimant one time. The claimant's treating physicians, on the other hand, found that she had "some depression" and treatment notes show that they considered this to be one of claimant's menopausal symptoms and not a separate, severe impairment. A review of the record shows that the claimant has no more than mild limitations in activities of daily living due to a mental impairment. She has stated that she gets stressed and cries occasionally, but she continues to maintain her home for herself and her daughter, make decisions for herself and, if Dr. Meacci's report is correct, care for her elderly mother. She has mild limitations in social functioning, having had some difficulty with alcohol in the past but remaining sober for the two previous years, interacting appropriately with medical staff, caring for her teen-aged daughter and taking public transportation without problems. She has no more than mild limitation in concentration, persistence or pace. While Dr. Meacci found that the claimant showed some difficulty with concentration, this may be due to pain rather than a true mental impairment. As for episodes of deterioration or decompensation, there have been none. The claimant has testified that she has received no mental health treatment and the objective treatment notes from her primary care physician show that the Wellbutrin that was prescribed was for menopausal symptoms. Thus, no severe mental impairment is present in this case.

R. at 19.

Furthermore, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's osteoarthritis and allied disorders, and pancreatitis are considered "sever" based on the requirements in the Regulations 20 CFR § 416.920(c).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

    4.        The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

    5.        The claimant has the following residual functional capacity: the claimant can lift and carry no more than 20 pounds and she must have a sit/stand option at her discretion.  She can kneel, squat, crawl, balance, climb and walk on occasions and her ability to push and pull is limited in both upper and lower extremities.  Finally, the claimant cannot reach overhead.

    6.        The claimant's past relevant work as telephone solicitor did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 416.965).

    7.        The claimant's medically determinable osteoarthrosis and allied disorder, and pancreatitis do not prevent the claimant from performing her past relevant work.

    8.        The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(f)).

R. at 22.

Plaintiff's brief in support of summary judgment asserts that the decision of the ALJ is not supported by substantial evidence because the ALJ erred in finding that plaintiff's mental depression and associated disorders constituted no more than a *de minimus* limitation that was not considered to be "severe" under step 2 of the sequential evaluation.

**IV.**    **Standard of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by

42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent and applicable to those rendered under Title XVI. *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson*

---

[1]

Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2]

Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

*v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he

grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See*

*Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

9

Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A).  In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(B), and 20 C.F.R. § §

404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834

F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c) (2002); 20 C.F.R. § 416.929.  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at

1195. While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

### V. Discussion

Plaintiff argues that the evidence unquestionably establishes that she has a "severe" mental health impairment that is more than *de minimis* at step 2 of the sequential evaluation, and that the ALJ's finding to the contrary is not supported by substantial evidence. The Commissioner's argues that there is substantial evidence to support the ALJ's decision.

As stated hereinabove, at step 2 of the evaluation process, the ALJ must determine whether the claimant has a "severe impairment." A severe impairment is one that significantly limits an individual's physical or mental abilities to perform basic work activities. The United States Supreme Court has held that a *de minimis* threshold applies to the severe impairment

determination.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  In *Bowen*, the Supreme Court found that the purpose of step 2 of the sequential evaluation is to act as a filter for claims in which medical impairments are so slight that it is unlikely the claims would be granted even if the age, education, and work experience of the claimants were taken into account.  *Id.* at 153.

Recently, in *McCrea v. Commissioner of Social Security,* 370 F.3d 357 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit stated the followed with regard to step two of the sequential evaluation:

> The burden placed on an applicant at step two is not an exacting one.  Although the regulatory language speaks in terms of "severity," the Commissioner has clarified that an applicant need only demonstrate beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  **Any doubt as to whether this showing has been made is to be resolved in favor of the applicant**.  In short, "[t]he step-two inquiry is a de minimus screening device to dispose of groundless claims".
>
> Due to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny.  We do not suggest, however, that a reviewing court should apply a more stringent standard of review in these cases.  The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as whole.  Instead, we express only the common-sense position that because step two is to be rarely utilized as basis for denial of benefits, its invocation is certain to raise a judicial eyebrow.

*Id.* at 360-61. (Emphasis added) (Internal citations omitted).

After reviewing the medical evidence submitted in support of plaintiff's mental impairment, and keeping in mind the legal principles enunciated by the Court of Appeals in *McCrea*, this Court agrees that plaintiff's mental impairment constitute more than a "slight abnormality."  In fact, plaintiff was seen, albeit only once, by Dr. Meacci, who performed the Minnesota Multiphasic Personality Inventory (MMPI) and Beck Depression Inventory tests, and

examined plaintiff for almost two hours. He noted that her prescription for Wellbutrin was doubled from 150mg to 300 mg.[3] Also, Dr. Meacci diagnosed plaintiff with Bipolar II disorder (recurrent major depressive episodes with hypomanic episodes), and (2) an adjustment disorder with mixed prominent anxiety symptoms and some depressive mood symptoms. Further, he diagnosed plaintiff as having a current global assessment of functioning (GAF) score of 45. (According to the Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV), a GAF score of 41-50 evidences serious symptoms or any serious impairment in social, occupational, or school functioning).

Significantly, plaintiff's primary care physician, Dr. Dhawam, previously diagnosed plaintiff as suffering from depression and depressive symptoms, secondary to menopause. On September 9, 2003, Dr. Dhawan noted that "she has been having a lot of stress, is very depressed, is having insomnia and is very emotional in the office today." Tr. 149, 188. Additionally, Dr. Dhawan prescribed plaintiff Paxil and opined to the Pennsylvania Department of Public Welfare that she was temporarily disabled due to a primary diagnosis of depression and a secondary diagnosis of osteoarthritis. Tr. 169, 188.

This evidence supports plaintiff's claim that her mental health impairment was more than *de minimus* and the ALJ's finding that plaintiff's depression was not severe is not supported by substantial evidence. Although the ALJ emphasizes that plaintiff was seen by Dr. Meacci only once, and this Court recognizes that fact, Dr. Meacci was also the only physician to do a psychological "work-up" specific to plaintiff's mental health. Tr. at 189-205. That work-up

---

[3]The Wellbutrin was prescribed by Dr. Lee, an associate of Dr. Dhawan, for plaintiff's "menopausal symptoms." Tr. 194-195.

included standardized testing that yielded objective evidence of plaintiff's mental health impairments. Tr. at 189-205. Moreover, and most importantly, the fact that her primary care physicians noted depressive symptoms and prescribed numerous antidepressants, regardless of the primary care physician's opinion that her depressive symptoms were caused by a secondary source (menopause), provides further support that her mental impairment is more than *de minimus*.

Although this Court is mindful that it may not weigh the evidence or substitute its own conclusions for that of the fact-finder, *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), this Court also recognizes that "great care should be exercised in applying the not severe impairment concept." *McCrea*, 370 F.3d at 361 (quoting SSR 85-28, 1995 WL 56856, at *4).

After reviewing the record as a whole, this Court finds that there is not substantial evidence to support the ALJ's conclusion that plaintiff's mental health impairments were not severe. Thus, this Court will remand this case for further considerations consistent with this opinion.

## VI. Conclusion

The Court has reviewed the ALJ's findings of fact and decision, and determines that the finding as to plaintiff's mental health impairments is not supported by substantial evidence. Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment in part (doc. no. 8), deny the Commissioner's (doc. no. 6), and remand for further proceedings.

An appropriate order will follow.

s/Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

17